NOT DESIGNATED FOR PUBLICATION

No. 128,383

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEVEN A. STONE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Oral argument held April 15, 2026. Opinion filed July 31, 2026. Affirmed in part and reversed in part.

*Grace E. Tran*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., BOLTON FLEMING, J., and JEFFREY GETTLER, District Judge, assigned.

PER CURIAM: Steven A. Stone appeals his six convictions for aggravated robbery arising from a string of Walgreens pharmacy robberies in Wichita. He challenges (1) the sufficiency of the evidence of a dangerous weapon on counts 3 and 4; (2) the prosecutor's statements regarding the law of dangerous weapons and the characterization of the robberies as "terrorizing" Wichita pharmacists; (3) the denial of his motion for mistrial based on a prospective juror's Snapchat posts; and (4) cumulative error. We reverse the convictions on counts 3 and 4 and affirm the remaining convictions.

1

Between August 19, 2021, and March 19, 2022, six robberies occurred at Walgreens pharmacies across Wichita. Each followed the same pattern: a masked white male, between 30 and 40 years old, under six feet tall, and approximately 200 pounds, approached the pharmacy counter, displayed a handwritten note demanding hydrocodone and threatening to shoot, and left after the pharmacist complied. The six incidents:

1. August 19, 2021, Walgreens at 21st Street and Maize Road. Pharmacist Courtney Black was shown a note demanding "'hydrocodone 10mg M367 #200 within 30 seconds or I shoot everybody.'" The suspect kept one hand in his hoodie pocket throughout.

2. November 21, 2021, Walgreens at Harry Street and Broadway Avenue. Pharmacy technician Bao Van was shown a note stating: "'Give me one bottle of hydrocodone or I'll shoot.'" The suspect moved one hand toward his waistband, causing Van to raise both hands.

3. December 15, 2021, Walgreens at 21st Street and Maize Road. Pharmacist Nicole Torres was shown a note stating the suspect "wanted 10MG Hydrocodone, he had a firearm, and that she had 10 seconds, or he would shoot everyone." Torres and pharmacist Jennifer Ferry each testified that they did not see a gun and observed no gesture suggesting one.

4. January 26, 2022, Walgreens at Central Avenue and West Street. Pharmacist Gunther Buresh was shown a note stating: "'Hydrocodone 10 in ten seconds or I start shooting.'" Buresh and pharmacist Patrick Chaney each testified that the suspect did not display a gun and made no gesture indicating one; the only reference to a firearm came from the note.

5. February 20, 2022, Walgreens at 13th Street and Waco Avenue. Pharmacy employee Jaime Valenzuela Jr. testified that the suspect both displayed a note

reading: "'Give me Narcos or I will start shooting,'" and showed Valenzuela a handgun in his waistband.

6. March 18, 2022, Walgreens at Central Avenue and West Street. Jessica Jenkins was shown a note demanding "'all of your Hydrocodone 10's or I'm going to start shooting'" and observed the suspect move one hand into his pocket. Pharmacist Justin Flint then handed over five bottles of hydrocodone.

*Police Investigation*

Investigators connected the robberies through surveillance footage, vehicle identification, and license-plate data. Footage from the third robbery showed the suspect arriving in a small red sedan, and nearby commercial surveillance refined the vehicle to a 2012-2014 Toyota Camry. A Flock camera search after the fifth robbery identified a Camry in the immediate vicinity bearing the same tag number as a tag reported stolen two hours after the robbery. The tag was registered to Stone, who had reported an earlier tag stolen on November 21, 2021, approximately two hours after the second robbery. Stone matched the suspect's general description and worked at Pathway's Church, about a half-mile from one of the targeted locations.

A pole camera installed at Stone's residence on March 9, 2022, captured Stone on the morning of the sixth robbery. He left in dark clothing and returned roughly an hour and a half later in clothing matching the suspect's, then placing a new license plate on the red Camry. A search warrant produced an empty hydrocodone 10s bottle of the type taken in the robberies, a handgun, and the license plate Stone had reported stolen after the fifth robbery. Cell-site records placed Stone's phone near each targeted Walgreens at the time of each robbery, including the approximate distance at each location.

*Procedural History*

Stone was charged with six counts of aggravated robbery.

After voir dire on the first day of trial, J.B. was selected as a prospective juror. Before the jury was sworn the next morning, the jury coordinator reported that J.B. had posted Snapchat content related to her jury duty. The court convened with counsel, Stone, and J.B. outside the presence of the remaining venire. J.B.'s posts consisted of (1) a photo of her parking ticket and jury questionnaire taken in the jury box, captioned: "Your Honor, he's guilty," with a courthouse location tag; (2) a courthouse-window photo captioned: "Beautiful rainy day"; and (3) a parking garage selfie captioned: "L because I was picked to be on the jury duty case for this whole damn week."

The judge confirmed that the first photo was taken before J.B. had heard anything substantive about the case because prospective jurors retain their questionnaires until the judge enters and the clerk collects them. J.B. explained that the posts were sarcastic, were not directed at Stone or the case, and were not shared with other jurors; she was not Snapchat friends with anyone on the panel and confirmed she could remain fair and impartial. Out of an abundance of caution, the court dismissed J.B. Defense counsel moved for a mistrial, which the court denied, and an alternate juror was seated.

After the State rested, the district court denied a defense motion for judgment of acquittal. The jury convicted Stone on all six counts. The district court imposed the aggravated 61-month term on each count to run consecutive, with 36 months' postrelease supervision. Stone's sentence was capped at 122 months under the double rule. Stone timely appealed.

*Was there sufficient evidence to support the dangerous weapon element in counts 3 and 4?*

Stone argues that no witness on counts 3 and 4 saw a weapon or any gesture suggesting one, so only the notes themselves remain. A note, he contends, cannot satisfy the dangerous weapon element. The State responds that it does not need to prove Stone actually exhibited a weapon, only that the evidence raised a reasonable inference he was armed.

*Standard of Review*

When sufficiency is challenged, appellate courts review the evidence in the light most favorable to the State to determine whether a rational factfinder could find guilt beyond a reasonable doubt. The court does not reweigh evidence or assess credibility. *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024). Reversal is reserved for the "rare cases" in which "the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt." *State v. Zeiner*, 316 Kan. 346, 350, 515 P.3d 736 (2022).

Statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022).

Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *State v. Betts*, 316 Kan. 191, 198, 514 P.3d 341 (2022). When construing statutes to determine

5

legislative intent, appellate courts must consider various provisions of an act *in pari materia* to reconcile and bring the provisions into workable harmony if possible. *State v. Strong*, 317 Kan. 197, 203, 527 P.3d 548 (2023). The courts must construe statutes to avoid unreasonable or absurd results and presume the Legislature does not intend to enact meaningless legislation. *State v. Gomez*, 320 Kan. 3, 15, 561 P.3d 908 (2025).

*The Dangerous Weapon Element*

Aggravated robbery is robbery "committed by a person who: . . . [i]s armed with a dangerous weapon." K.S.A. 2021 Supp. 21-5420(b)(1). A dangerous weapon is "an instrument which, from the manner it is used, is calculated or likely to produce death or serious bodily injury." *State v. Colbert*, 244 Kan. 422, Syl. ¶ 4, 769 P.2d 1168 (1989). Whether an object qualifies is judged from the victim's perspective:

> "An object can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon. Hence, an unloaded gun or a gun with a defective firing mechanism may be a dangerous weapon within the purview of the aggravated robbery statute." 244 Kan. 422, Syl. ¶ 3.

Accord *State v. Davis*, 227 Kan. 174, 177, 605 P.2d 572 (1980).

The State need not prove the weapon was actually displayed. Circumstantial evidence raising a reasonable inference that the defendant was armed will suffice. *State v. Robertson*, 225 Kan. 572, 573-74, 592 P.2d 460 (1979); see *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976). But that inference must rest on some overt act, typically a menacing gesture paired with a verbal threat, designed to convey to the victim that the robber is armed. *State v. Holbrook*, 261 Kan. 635, 638, 932 P.2d 958 (1997); see *Robertson*, 225 Kan. at 572-73 (defendant placed hand in pocket and pointed it at clerk while announcing robbery).

6

*There was insufficient evidence to establish the dangerous weapon element.*

Counts 1, 2, 5, and 6 are not disputed. In each, Stone coupled the note with a menacing act: keeping a hand in his hoodie pocket, reaching toward his waistband, moving a hand into his pocket during the encounter, or (in count 5) actually displaying a handgun.

Counts 3 and 4 are different. The four pharmacists involved, Torres and Ferry on December 15, and Buresh and Chaney on January 26, each testified that they did not see a gun and observed no gesture suggesting one. Their only reference point for a weapon was the note itself. Thus, the determination of whether there was a dangerous weapon sufficient to constitute an aggravating circumstance depends solely on whether the note that Stone displayed could constitute a deadly weapon. The State offers three theories to bridge that gap, but none succeed.

First, the State relies on Detective Timothy Reynolds' testimony that "witnesses in every aggravated robbery . . . reported to police that they believed there had been a gun because, 'the suspect had had a hand in a pocket of the hoodie, [which] was in there the whole time, or placed it in there, making them believe that [the suspect] actually had a gun.'" Reynolds spoke about the witnesses collectively. But the four pharmacists at issue testified individually, and repeatedly, that they saw no gun and no gesture. The investigating officer's generalized summary cannot displace the victims' specific sworn trial testimony.

Second, the State points to surveillance video showing Stone briefly placing a hand in his pocket during the December 15 and January 26 robberies. The footage is accurate, but the video shows only the incidental act of returning the note to the pocket, outside the interaction with the victims and unaccompanied by any pointing, bulge, or

7

simulation of a firearm. That is not the menacing gesture *Holbrook* and *Robertson* require. See *Holbrook*, 261 Kan. at 638; *Robertson*, 225 Kan. at 573.

Third, the State argues that because the robberies were "nearly identical," the jury could infer that Stone was armed on counts 3 and 4 as a matter of modus operandi. The State may rely on multiple independent circumstances to support an inference, but each must be independently proved, not presumed from the other. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021); see *State v. Valdez*, 316 Kan. 1, 11-12, 512 P.3d 1125 (2022). Inference stacking is prohibited. *State v. Banks*, 306 Kan. 854, 861, 397 P.3d 1195 (2017); see *State v. Mora*, 315 Kan. 537, 547, 509 P.3d 1201 (2022). And "mere suspicion, however strong, is not enough." *State v. Doyle*, 201 Kan. 469, 489, 411 P.2d 846 (1968). The State's theory requires precisely the stacking those cases forbid. From the single robbery in count 5 in which a handgun was actually displayed, the jury must infer that Stone was armed in every robbery; from that inference, the jury must infer that he was armed on counts 3 and 4 and, then, that the unobserved weapon could have carried out a threat. The State did not prove a separate, independent weapon fact for counts 3 and 4; it asked the jury to presume one.

The modus operandi theory also conflicts with K.S.A. 60-455(b), which permits other-crimes evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. It does not permit the jury to infer that because Stone made a menacing gesture during other robberies, he must have done so on counts 3 and 4. And of the four victims in those counts, only Ferry testified that she was even aware of an earlier robbery. Her testimony went to recognizing the situation and complying quickly, not to any belief that a gun was present.

8

*Smith does not compel a different result.*

This court previously found that a note alone, referencing a gun, can supply the dangerous weapon element. *State v. Smith*, No. 82,945, 2000 WL 36746341, at *1 (Kan. App. 2000) (unpublished opinion). This court held that

> "To support a conviction for aggravated robbery, the State was required to prove Smith was armed with a dangerous weapon when he entered the After Dark video store and took property by force or threat of bodily harm. Nevertheless, a subjective test is employed for determining when a dangerous weapon has been used during the commission of an aggravated robbery.
>
> "Two factors are taken into consideration under the subjective test: the intent of the robber and the victim's reasonable belief. The robber's conduct or statements or both, if intended to convince the victim that the robber is armed, coupled with a reasonable indication by the victim that he or she was so convinced, may be legally sufficient to satisfy these elements.
>
> "Here, Smith's note told the victim, William Curless, that Smith had a gun and that Smith would shoot Curless if he did not comply with Smith's demands. Smith specifically included the reference to the gun as a scare tactic. Curless testified that at the time the robbery occurred, he believed Smith had a gun, and he was scared because he thought he might be killed. In response to the threat, Curless gave Smith and another robber all the bills from the cash drawer. As a result, the armed with a dangerous weapon element was satisfied. [Citations omitted.]" *Smith*, 2000 WL 36746341, at *1.

One Kansas Court of Appeals panel has the right to disagree with a previous panel of the same court. *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018).

Robbery is "knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person." K.S.A. 2021 Supp. 21-5420(a). It is a fear-based offense committed by words and threats. Treating the words on a note as the "dangerous weapon" erases the distinction between simple and aggravated robbery, since

9

any credible robbery threat could be recharacterized as evidence that the robber was armed. The Legislature aggravated this offense to punish a qualitatively greater wrong, namely putting the victim at gunpoint, simulating that act, or inflicting actual harm. See K.S.A. 2021 Supp. 21-5420(b). On counts 3 and 4, the victims complied calmly with a written demand, observed no gun and no gesture, and the robber left without escalation. A note, oral or written, is not transformed into a weapon simply because it conveys a threat.

Based on the plain language of the statute, Stone's actions in counts 3 and 4 do not demonstrate aggravating circumstances sufficient to support a conviction under K.S.A. 2021 Supp. 21-5420(b)(1). If a note alone were enough, simple robbery would cease to exist as a distinct offense. We therefore reverse the convictions on counts 3 and 4 and vacate the sentences imposed on them.

*Did the prosecutor err in misstating the law or inflaming the passions of the jury?*

Stone challenges (1) the prosecutor's argument that the note alone could satisfy the dangerous weapon element and (2) the use of the word "terrorize" to describe the robberies' impact on the Wichita pharmacists. The State asserts that when the statements are properly viewed in context, neither statement constitutes prosecutorial error.

*Standard of Review*

No contemporaneous objection is required to preserve a prosecutorial error claim, though the presence or absence of an objection may factor into the analysis. *State v. Smith*, 320 Kan. 62, 73, 563 P.3d 697 (2025); *State v. Bodine*, 313 Kan. 378, 406, 486 P.3d 551 (2021). This court applies a two-step test: whether the prosecutor's conduct fell outside the wide latitude afforded the State, and, if so, whether it prejudiced the defendant's right to a fair trial. *Mendez*, 319 Kan. at 737.

10

A prosecutor errs when arguing a fact or factual inference without an evidentiary foundation. *State v. Watson*, 313 Kan. 170, 179, 484 P.3d 877 (2021). Even so, a prosecutor may argue evidence demonstrates a defendant is guilty so long as the prosecutor does not state personal opinions on the ultimate guilt of the defendant. *State v. Douglas*, 313 Kan. 704, 714, 490 P.3d 34 (2021). In addition, upon review, the court does not consider any statement in isolation but looks instead to the context to determine whether an error occurred. *State v. Timley*, 311 Kan. 944, 949-50, 469 P.3d 54 (2020).

If error is found, in the second step of the prosecutorial misconduct analysis, the appellate court should consider (1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. *State v. Frost*, No. 98,433, 2009 WL 2371007, at *11 (Kan. App. 2009) (unpublished opinion). None of these three factors is individually controlling, and the third factor may not override the first two factors unless the harmless error tests of both K.S.A. 60-261 (refusal to grant new trial is inconsistent with substantial justice) and *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (conclusion beyond a reasonable doubt that error had little, if any, likelihood of having changed result of trial), have been met. *State v. Albright*, 283 Kan. 418, 428, 153 P.3d 497 (2007).

The effect of a jury admonition attempting to remedy a prosecutor's error must be considered in determining whether the erroneous conduct prejudiced the jury and denied the defendant a fair trial. *State v. Barber*, 302 Kan. 367, 383, 353 P.3d 1108 (2015).

*The "note is enough" statement was error but harmless.*

In closing, the prosecutor told the jury:

"[T]o be sufficient to be a dangerous weapon, I don't have to prove he had a gun. I don't have to prove he showed a gun. I have to prove that he had an object that can be a dangerous weapon if the user intended to convince a person that it is a dangerous weapon, and that the person reasonably believed it to be a dangerous weapon. The note is enough."

The prosecutor later restated the *Colbert* standard correctly, but on rebuttal they returned to the position that the "illusion from the piece of paper," combined with Stone's having "just a pocket that could house" a gun, was sufficient. For the reasons stated above, that argument misstates the law. See *State v. Davis*, 306 Kan. 400, 413-14, 394 P.3d 817 (2017); *State v. Carter*, 305 Kan. 139, 151, 380 P.3d 189 (2016); *State v. Longoria*, 301 Kan. 489, 524, 343 P.3d 1128 (2015).

Although the statement was error, it is harmless. It could only have affected counts 3 and 4, which are vacated on independent sufficiency grounds. The remaining counts each involve an undisputed menacing gesture or actual display of a handgun, so the note-alone theory could not reasonably have affected those verdicts. The district court also instructed the jury that statements of counsel "are not evidence" and must be disregarded if unsupported by the record. We presume the jury followed that instruction. *State v. Reid*, 286 Kan. 494, 521, 186 P.3d 713 (2008).

*The use of "terrorize" was not error.*

Stone argues that the prosecutor's use of the word "terrorize" to describe the string of robberies across Wichita Walgreens was not a comment on the evidence but instead an attempt to inflame the jury's passion and promote sympathy for the pharmacy employees.

12

The prosecutor described the robberies as having "terrorized" Wichita pharmacists. "Terrorize" means "to fill with terror; terrify" or "to coerce, make submit, etc. by filling with terror, as by the use or threat of violence." Websters New World College Dictionary 1497 (5th ed. 2018). Under the very definition of robbery, Stone did in fact terrorize the various Walgreens pharmacists in Wichita. The evidence supporting this characterization was direct and overwhelming such that any alleged misconduct would have carried little weight in the minds of the jurors. The prosecutor did not reach outside the record to embellish what had been presented at trial; rather, the comments reflected a fair interpretation of how the prosecutor sought to have the jury view the evidence. *State v. Cabrera-Sanchez*, No. 112,588, 2016 WL 197805, at *9 (Kan. App. 2016) (unpublished opinion). Thus, the challenged statement constituted a reasonable inference drawn from the evidence and did not amount to error.

*Did the district court err in denying Stone's request for a mistrial?*

Stone argues that J.B.'s Snapchat posts violated his presumption of innocence and may have tainted the seated jury. The State responds that any concern was cured by J.B.'s prompt dismissal and that no evidence shows the posts reached any other juror.

*Standard of Review*

A party seeking to impeach a verdict based on juror misconduct must demonstrate both that misconduct occurred and that the misconduct substantially prejudiced that party's right to a fair trial. *Stover v. Superior Industries Int'l, Inc.*, 29 Kan. App. 2d 235, 243, 29 P.3d 967 (2000).

Courts have discretion to consider evidence of the "physical facts, conditions, or occurrences of juror misconduct which come to the attention of other members of the jury panel which may be verified or denied." *Vallejo v. BNSF Railway Co.*, No. 119,100, 2021

13

WL 402066, at *7 (Kan. App. 2021) (unpublished opinion) (citing *Williams v. Lawton*, 288 Kan. 768, 799, 207 P.3d 1027 [2009]).

> "If a fundamental failure did occur, the trial court moves to the second step and considers whether the party benefitting from the failure has shown the trial can continue without an injustice, meaning the party has shown beyond a reasonable doubt that the failure did not affect the outcome of the trial. An appellate court reviews the trial court's decision in two parts. It reviews the conclusion on whether a fundamental failure occurred for an abuse of discretion. As for the second question—whether any failure resulted in injustice—an appellate court does not review the district court's decision for abuse of discretion but considers the entire record and performs its own constitutional harmless error review."
> *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 3, 422 P.3d 72 (2018).

A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

When an error infringes upon a party's federal constitutional right, a court will declare a constitutional error harmless only when the party benefiting from the error persuades the court "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011) (citing *Chapman*, 386 U.S. 18).

### *The record shows no taint to the seated panel.*

J.B.'s posts, particularly the "Your Honor, he's guilty" caption, were inappropriate. But the record shows no taint to the seated panel. The "guilty" caption was posted before voir dire, when J.B. had heard nothing substantive about the case. J.B. was not Snapchat friends with any other juror, and nothing in the record suggests she communicated the

14

posts to anyone on the seated panel. The posts did not identify the case, the parties, or any evidence. The district court promptly dismissed J.B. before the jury was sworn and seated the alternate.

The Kansas Supreme Court's decision in *State v. Kirkpatrick*, 286 Kan. 329, 184 P.3d 247 (2008), *overruled on other grounds by State v. Barlett*, 308 Kan. 78, 418 P.3d 1253 (2018), is instructive. There, a *sworn* juror told a coworker the defendant was "guilty" and that everyone was "wasting their time," yet the court declined to order a new trial because the affidavit did not show the view was fixed or that it had affected the verdict. 286 Kan. at 351, 355. The conduct here is materially less concerning. J.B. was a prospective juror, was removed before the jury was sworn, never deliberated, and no evidence suggests her posts reached anyone who did. The district court's decision was not arbitrary, fanciful, or unreasonable, nor was it based on an error of law or fact. *Ingham*, 308 Kan. at 1469.

*Did cumulative error deny Stone the right to a fair trial?*

Stone argues that the cumulative effect of the prosecutor's misstatement of the law, the prosecutor's characterization of the string of robberies as "terrorizing" Wichita pharmacists, and the Snapchats from J.B. denied him a fair trial. The State asserts that at most, Stone has established just one prosecutorial error which relates to counts 3 and 4. And because Stone only challenges the sufficiency of the evidence of two of his six convictions, reversal of counts 3 and 4 would not accumulate with the remaining errors; thus the remaining four convictions would stand and not require reversal.

Cumulative error requires multiple errors that, in the aggregate, deny the defendant a fair trial. *State v. Guebara*, 318 Kan. 458, 483, 544 P.3d 794 (2024).

CONCLUSION

The aggravated robbery convictions on counts 3 and 4 are reversed and the sentences on those counts vacated; the State's evidence, even viewed most favorably to the prosecution, did not establish the dangerous weapon element of K.S.A. 2021 Supp. 21-5420(b)(1). The remaining claims either established no error or are harmless and did not, individually or cumulatively, deny Stone a fair trial.

Affirmed in part and reversed in part.